<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LUIS A. MARTIR,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | **Civil Action No. 15-5335 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

  Before the Court is Plaintiff Luis A. Martir's appeal seeking review of Administrative Law Judge Donna A. Krappa's (the "ALJ") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth herein, the Court AFFIRMS the Commissioner's decision.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

  On March 22, 2012, Plaintiff filed a Title II claim for DIB and a Title XVI application for SSI alleging disability beginning April 1, 2010. (D.E. No. 5, Administrative Record ("Tr.") at 18). Plaintiff alleges a disability stemming from musculoskeletal conditions, specifically, mild cervical osteoarthritis and a history of soft tissue injury to the neck, as well as chronic grade 3 dislocation of the left acromioclavicular joints. (*Id.*). The claims were initially denied on June 1, 2012, and

then denied upon reconsideration on November 16, 2012. (*Id.*). Plaintiff requested a hearing before an ALJ, which was held on September 16, 2013. (*Id.*).

On February 10, 2014, the ALJ issued an unfavorable decision. (*Id.* at 27). Thereafter, Plaintiff requested an Appeals Council review, which was denied on May 6, 2015. (*Id.* at 1). Plaintiff subsequently filed the instant appeal.

Plaintiff filed a brief in support of the instant appeal, (D.E. No. 9, Plaintiff's Memorandum of Law ("Pl. Mov. Br.")), and Defendant filed an opposition brief, (D.E. No. 12, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")).  The case is ripe for determination.

## II.     LEGAL STANDARD

### A.  Standard of Awarding Benefits

To receive DIB or SSI under Titles II and XVI, a plaintiff must show that he is disabled within the definition of the Act. *See* 42 U.S.C. §§ 423, 1382. In applying for DIB, claimants must also satisfy the insured status requirements enumerated in 42 U.S.C. § 423(c). Those who seek SSI must fall within the income and resource limits set forth in 42 U.S.C. §§ 1382a and 1382b.

Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(B).

The Social Security Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 416.920. If the determination at a particular step is dispositive of whether the plaintiff is or is not disabled, the inquiry ends. 20 C.F.R. § 416.920(a)(4). The burden rests on the plaintiff to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1]  At step five, the burden shifts to the government. *Id.*

At step one, the plaintiff must demonstrate that he is not engaging in any substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 416.972(a), (b). If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. § 416.920(b). If the plaintiff demonstrates he is not engaging in substantial gainful activity, the analysis proceeds to the second step.

At step two, the plaintiff must demonstrate that his medically determinable impairment or the combination of his impairments is "severe." 20 C.F.R. § 416.920(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

At step three, the ALJ must assess the medical evidence and determine whether the plaintiff's impairments meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R.

---

[1]  Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

§ 416.920(a)(4)(iii). The ALJ must "fully develop the record and explain his findings at step three." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether the plaintiff has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the plaintiff lacks the RFC to perform any work he has done in the past, the analysis proceeds.

In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on his age, education, work experience, and RFC. 20 C.F.R. § 416.920(a)(4)(v).

**B. Standard of Review**

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review because it cannot "weigh the evidence or

4

substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

## III.   DISCUSSION

Plaintiff asserts two primary arguments in support of his appeal.  First, Plaintiff argues that the ALJ's RFC determination[2] is unsupported by substantial evidence.  (Pl. Mov. Br. at 10).  In particular, Plaintiff challenges the ALJ's finding that he can lift and carry twenty pounds one-third of the day (2.5 hours) and ten pounds for eight hours while pushing and pulling the same weights.  (*Id.* at 12).  Second, Plaintiff argues that the ALJ erred in finding that Plaintiff is able to communicate in English.  (*Id.*).  The Court addresses each argument in turn.

### A.  The ALJ's RFC Determination Is Supported by Substantial Evidence

The RFC determination is a function-by-function assessment based upon all the relevant evidence of an individual's ability to do work-related activities.  Social Security Regulation ("SSR") 96-8p, 1996 WL 374184, at *3 [hereinafter SSR 96-8p].  To determine the RFC, the adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess the RFC.

---

[2] The ALJ's RFC determination is as follows:

> [T]he Claimant has the residual functional capacity to perform the *exertional demands* of light work as defined under the Regulations; specifically, he is able to: lift/carry 20 lbs. occasionally and 10 lbs. frequently; stand/walk for 6 hours in an eight hour work day; sit for 6 hours in an eight hour work day; perform unlimited pushing and pulling with the lower extremities and the right upper extremity; however, as to the left upper extremity he is limited to frequent (as opposed to unlimited) pushing and pulling.  He is able to perform no overhead reaching with the left upper extremity and lifting to 90 degrees with that extremity is limited to occasional.  There is no limitation on the right arm, which is available as a "helper"; he is limited to frequent (as opposed to unlimited) handling with the right hand.  Moreover, regarding the *postural and environmental demands* of work, I find that the claimant is able to perform jobs: that require occasional use of ladders, ropes, or scaffolds; that require unlimited use of ramps or stairs; and that require only occasional kneeling, but unlimited balancing, stooping, crouching, and/or crawling.  (Tr. at 22) (emphasis in original).

(*Id.* at \*5). The adjudicator must also explain how any material inconsistencies or ambiguities in the record were considered and resolved. (*Id.* at \*7). Further, the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). (*Id.*). To be sure, the RFC represents "the most that an individual can do despite his or her limitations or restrictions." (*Id.* at \*4).

Plaintiff argues that the ALJ's RFC assessment is unsupported by substantial evidence. (Pl. Mov. Br. at 16-18). First, Plaintiff asserts that the ALJ's RFC "seems to be an arbitrary and convenient restatement of the orthopedic opinion of Dr. Glushakow . . . ." (*Id.* at 16). As such, Plaintiff argues that the ALJ failed to provide sufficient bases for the following findings: (i) that Plaintiff can "reach to shoulder level (90 degrees) occasionally (2.5 hours a day)"; (ii) that Plaintiff can "lift weights all day (10 pounds) or a third of the day (20 pounds)"; and (iii) that Plaintiff's left shoulder can "push and pull frequently (more than 5 hours a day)." (*Id.* at 16-17). Second, Plaintiff asserts that the ALJ made contradictory findings without explaining the contradictions. (*Id.* at 17). For example, Plaintiff points to the ALJ's findings that he can, on the one hand, perform "no overhead reaching with the left upper extremity," but, on the other hand, "occasionally . . . use ladders, ropes and scaffolds." (*Id.*).

In response, Defendant argues that the ALJ accounted for all of Plaintiff's functional limitations credibly established by the evidence. (Def. Opp. Br. at 5). Defendant contends that the ALJ "discussed Plaintiff's testimony, his record statements, and the objective medical evidence concerning the relevant period." (*Id.*). Defendant also points out that the ALJ considered other evidence indicative of Plaintiff's functional limitations. For example, Plaintiff testified that he served as the daily caregiver for his 15-month old son, who weighed 18-20 pounds, while his wife

worked four days per week. (*Id.* at 6). Plaintiff also "reported taking the garbage cans outside, using both hands, and doing laundry at the laundromat, using a laundry cart to transport clothes from the car." (*Id.*).

The Court finds that the ALJ's RFC determination—namely, that Plaintiff can perform light work with specific reaching and handling limitations—is supported by substantial evidence. The ALJ cited Plaintiff's own testimony that he spent his days caring for his 15-month-old son, including lifting, feeding, cleaning, and changing him. (Tr. at 23). Plaintiff testified that his son weighs between 18 to 20 pounds and that Plaintiff is able to lift him with his right hand only. (*Id.* at 52). Plaintiff further testified that he took out the garbage using both hands (*id.* at 55) and laundered clothes at a laundromat using a cart to transport the clothes from the car (*id.* at 59). In addition, Plaintiff testified that his previous employment included fixing and repairing apartments and hotel rooms. (*Id.* at 42-43). Significantly, Plaintiff testified that he discontinued working not because of his pain or limitations, but rather because he "wasn't completely trained to do the work that they required [him to] do." (*Id.* at 44). As Defendant points out, "such demonstrated abilities and activities undermined Plaintiff's claim of experiencing pain and limitations of disabling severity." (Def. Opp. Br. at 6).

The ALJ also relied on the objective medical evidence to conclude that Plaintiff's musculoskeletal disorder caused no more than mild to moderate limitations. (*See generally* Tr. at 24-25). For example, Plaintiff sustained an injury from a motorcycle accident in 2006 and received a diagnosis in February 2007 of chronic grade 3 dislocation of the left acromioclavicular joint. (*Id.* at 23-24). Following surgery and participation in physical therapy, Plaintiff experienced reduced range of motion and decreased strength in his left shoulder. (*Id.* at 24). Yet, a January 2008 report indicated that Plaintiff had "excellent range of motion of his left shoulder." (*Id.*). Additionally, a

September 2009 examination revealed normal left shoulder range of motion and minimal tenderness, as well as normal cervical range of motion and only minimal cervical spine tenderness. (*Id.*). The ALJ noted that Plaintiff's conditions "were all listed as having sustained overall improvement." (*Id.*).

The objective medical evidence from the relevant time period showed that Plaintiff had exertional and postural limitations, as well as reaching and handling limitations, that affected his functional capacity but did not render him disabled from all work. For example, physical therapy records from June 2012 demonstrate that Plaintiff had a moderately limited range of motion and decreased strength, but could ambulate without the use of an assistive device. (*Id.*). In August 2012, Plaintiff reported that he could lift his arm better, and in October 2012, Plaintiff's physical examination revealed left-sided weakness of the left deltoids and biceps, but normal strength in his right biceps, bilateral triceps, wrists extensors, and grasps. (*Id.*). Plaintiff's October 2012 physical examination also revealed increased range of bilateral shoulder joint motion and improved posture. (*Id.*). In addition, Plaintiff's diagnostic evidence, such as his April 2012 x-ray and May 2013 and July 2013 MRIs, demonstrates moderate limitations to his left shoulder and mild limitations to his cervical spine. (*Id.*).

Finally, the ALJ afforded "great weight" to the results of a state agency consultative examination. (*Id.* at 24-25). In May 2012, Dr. Allen Glushakow examined Plaintiff and concluded that Plaintiff had a moderate restriction of the external rotation and abduction of the left shoulder. (*Id.* at 25). Dr. Glushakow further found that Plaintiff exhibited a mild restriction of range of motion on the neck without cervical spasm. (*Id.*). In addition, Dr. Glushakow determined that, although Plaintiff's left shoulder was weaker than Plaintiff's right shoulder, Plaintiff retained full motion of both elbows, wrists, and hands. (*Id.*).

The substantial evidence supports the ALJ's finding that Plaintiff "is able to partially utilize his left arm, fully utilize his right arm, and utilize his hands in a manner that is entirely consistent with light work with some reaching limitations in the left side." (*Id.*). To that end, the ALJ's RFC determination incorporates appropriate reaching and handling restrictions to account for Plaintiff's mild and moderate exertional limitations as reflected by the record evidence. And, as noted *supra*, the ALJ's RFC determination represents the *most* Plaintiff can do despite his condition. SSR 96-8p at *4. Plaintiff's argument that the RFC "seems to be an arbitrary and convenient restatement" of Dr. Glushakow's opinion (Pl. Mov. Br. at 16) ignores the additional evidence on which the ALJ relied, e.g., Plaintiff's testimony regarding his daily activities as caregiver to his infant son (Tr. at 23). Accordingly, the Court concludes that the ALJ's RFC determination is supported by substantial evidence.

### B. The ALJ's English-Language Determination Is Supported by Substantial Evidence

As noted *supra*, step five of the disability analysis requires the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on his age, education, work experience, and RFC. 20 C.F.R. § 416.920(a)(4)(v). A plaintiff's ability to communicate in English is an educational factor. 20 C.F.R. § 404.1564(b)(5). Specifically, the Regulations provide:

> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

(*Id.*).

Plaintiff challenges the ALJ's finding that he is able to communicate in English. (Pl. Mov. Br. at 18-22). First, Plaintiff seeks to discount the disability reports he submitted with his DIB and SSI applications indicating that he can read, write, and communicate in English. (*Id.* at 20). Plaintiff asserts that the disability reports have no evidentiary value because the reports are unsigned and undated. (*Id.* at 20). Second, Plaintiff criticizes the ALJ's decision for obscuring the facts that "the hearing took place through a Spanish interpreter" and "that there was any issue of plaintiffs [sic] illiteracy in the English language manifested by his inability to write in the English language." (*Id.* at 21).[3]

Defendant argues that the ALJ properly relied on substantial evidence to determinate that Plaintiff is able to communicate in English. Regarding Plaintiff's disability reports, Defendant points out that neither Plaintiff nor his attorney objected at the hearing when the ALJ stressed that the reports were completed in connection with Plaintiff's applications and that Plaintiff provided the affirmative responses. (Def. Opp. Br. at 11). Defendant further notes that one of the disability reports contains the question, "Who is completing this form?" along with the response, "The person who is applying for disability." (*Id.* at 12). In addition, Defendant argues that Plaintiff's testimony during the hearing makes clear he can communicate in English. Defendant contends that, "[a]lthough the interpreter remained on standby throughout Plaintiff's testimony, Plaintiff provided testimony, responded to questions, and communicated throughout the hearing in English. He never indicated that he needed assistance understanding English at the hearing and never requested or required the services of the interpreter." (*Id.* at 12-13).

---

[3] Plaintiff also argues that the ALJ exhibited the appearance of bias when she made a purportedly inappropriate comment. (*See* Pl. Mov. Br. at 18-19). The Court need not address this argument because, for the reasons discussed herein, substantial evidence supports the ALJ's determination that Plaintiff is able to communicate in English.

The Court finds substantial evidence in the record to support the ALJ's finding that Plaintiff is able to communicate in English. As Defendant correctly points out, Plaintiff communicated in English throughout the entire administrative hearing (which consisted almost exclusively of back-and-forth between Plaintiff and either the ALJ or Plaintiff's attorney) and at no point required the services of the interpreter. (Tr. at 36-74). The following exchange is illustrative of Plaintiff's ability to communicate in English:

> Q: . . . So, the car—when you were in this accident, were you at fault in that motorcycle accident or was the other person who struck you at fault?
>
> A: No. The company send me to get some screws for the company. And, at that time I had the motorcycle with me and so I went on the motorcycle. So this lady, she was behind me like three cars but she was on her cellular phone.
>
> Q: Right.
>
> A: And then when she get close to me that was, I was already, you know, stopped, stopping because it was a yellow light and there was some car in front of me so she hit from behind.

(*Id.* at 45). Indeed, Plaintiff understood virtually all questions posed to him, provided responsive and coherent testimony, and declined at every instance his attorney's invitations to respond in Spanish. The Court finds that Plaintiff's demonstrated ability during the administrative hearing constitutes substantial evidence that he "is able to communicate in English." *See Richardson*, 402 U.S. at 401 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

## IV.    CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner of Social Security.  An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
